King, J.,
delivered the opinion of the court.
This "case presents for' determination the .contest of a written instrument' purporting to he, and presented for prohate as,-the last will and testament of• David F: Miller,' .who .’died in Canon City in December; 1906; -Miller whs *234 a pioneer of Park county, Colorado, having lived there continuously from 1862 until about the year 1900, after which time he appears to have made his headquarters in Denver. That he left Park county and came to Denver with the intention of changing his domicile from Park county, where he had resided for almost forty years, does not appear. He had no family dependent upon him at that time. His wife had died, and the other members of his family (his son and three foster children) were grown and had established homes of their own. While in Denver, Miller lived in the family of others, and made no attempt otherwise to establish a home of his own in that city. He made frequent trips to hife ranch in Park county, and spent considerable time there. The record does not disclose the relative portion of the time spent in Denver and upon the ranch, but apparently he would go back and forth between Denver and his ranch, during the summer months, and on different occasions visited in California. The record is silent as to the circumstances of his death, or how long he had been in Canon City at the time of that event. We infer, however, that he was there temporarily. Whether he was a resident of the City and County of Denver at the time of his death, or that Park county was still “the county of the last known residence of such testator,” is urged as one of the important questions for our determination. Some of the records of the county court which should have been certified to the district court, and presumably-were lodged therein, are not preserved in the transcript, and therefore some matters are indefinite, such as dates when and just what proceedings actually took place in the county court. It appears from the certificate of the clerk of the district court that there had been filed in his office “a certain appeal bond in an appeal from a judgment of the county court of said state in and for said county of Park, together with a transcript of said judgment, and the pleadings and files in a certain *235 canse theretofore pending in said court entitled, “In the Matter of the Last Will and Testament of David F. Miller, Deceased,” but no part of said transcript from the county court appears in this court, with the exception of an amended caveat and demurrer thereto, the order overruling the demurrer, and the answer to the amended caveat. However, it is admitted that after the death of David F. Miller, the appellees, who are named as executors and trustees in the will, presented to the county court of Park county what purported to be the last will and testament of said David F. Miller, and that the person named as executors were by the said court appointed administrators to collect pending the probate of the will. It is shown that George A. Miller, the appellant, filed his caveat at some date not shown by the record, and on January 18,1909, his amended caveat, in which he alleged that the paper writing presented as the will of David F. Miller was not his will, nor the codicil his codicil; that at the time of executing the same, the testator was not capable of executing a last will and testament and codicil, and, if executed, they were executed under undue influence of certain persons in said caveat named; and, further, that said paper writing, if a will, is void for that it violates, the law and rule of perpetuities. Upon this caveat and the answer thereto the issues were made and trial had, resulting in a judgment sustaining the will, and admitting it to probate. From said judgment an appeal was taken to the district court of Park county. In pursuance of said appeal, the transcript, as it appears herein, was filed in the district court April 10, 1911. On May 22, 1911, the case came on for trial in the district court, resulting in a judgment rendered and entered upon a verdict directed by the court, sustaining the will. From said judgment, the case is brought to this court on appeal. There is nothing in the record to explain the delay from December, 1906, the date of testator’s death, to April 10, *236 1911, when the papers on appeal were filed in the district court, which time, unexplained, seems unduly long.
I.
When the case was called for trial in the district court May 22,1911, appellant for the first time interposed a motion for change of venue to the City and County of Denver. This motion was based upon the grounds (1) that Park county was not the proper county for probate of the will, because, as it was alleged, the testator at the time of his death was a resident of Denver, and that the greater part of his personal estate was kept and found in the City and County of Denver; (2) that the contestant could not have a fair trial in the county of Park, because of the interest of the district judge of said county in the subject matter of the litigation, and of his undue influence tending to prejudice the people of the county against contestant; (3) of convenience of witnesses. This motion was overruled, and error is assigned thereon and urgently insisted upon, both in the written briefs and oral argument.
The provisions of two statutes are involved in this motion, vis., sections 7900 and 8043, Mills’ Ann. Stats. 1912 (7102 and 7254, Rev. Stats. 1908).
•. “The administration of all estates of persons dying testate or intestate, and of all minors and persons mentally incompetent, shall be had in the county court of the county of the last Imown residence of such testator, intestate, minor or mental incompetent, or if he had no residence in this state, then in the county court of the county wherein his personal estate or the greater part thereof may be found, but if he left no personal estate, then in the county court of the county wherein his real estate, or the greater part thereof, is situated.” * * * —rSection 7900, Mills’ Ann. Stats. 1912; 7102, Rev. Stats. Í908.
*237 “All questions of law and fact, relating to probate matters, or arising in proceedings under this act, in any county, shall be determined by the county court of such county, and from any and all final judgments or decrees upon any such questions, appeals or writs of certiorari shall lie to the district court of the same county, and from the district court to the court of appeals or supreme court, or from the county court to the court of appeals or supreme court, as in other cases, to be allowed, and prosecuted in the same manner as appeals or writs of certiorari, respectively, when prosecuted in civil or law cases from the decisions of such county or district courts; * * * . In all such appeals it shall be the duty of the appellate court, when any such question shall have been finally passed upon, to transmit, or cause to be transmitted, by the clerk thereof, to the county court from which such appeal was taken, a transcript showing the disposition of such appeal, whereupon such county court shall proceed in accordance with such finding, order or disposition thereof by such appellate court.” — Section 8043, Mills’ Ann. Stats. 1912; 7254, Rev. Stats. 1908.
Appellant’s motion was supported by his affidavit, that all of the personal effects of the testator at the time of his decease were, and for a long time prior thereto had been, in the City and County of Denver, except a few things that he had left on a ranch in Park county, “and that he had taken up his home in said City and County of Denver.” This affidavit was not ¡disputed by any counter-affidavit offered directly for that purpose. Appellant’s contention is that the provisions of section 7900, that the administration of all estates of persons dying testate or intestate shall be had in the county court of the county of the last known residence of such testator or intestate, are mandatory, and cannot be waived; that, therefore, on the filing of the motion and affidavit aforesaid demanding a change of venue, the district court was *238 deprived of jurisdiction, except for the purpose of granting the change. That the provisions of said statute are mandatory is conceded, hut it does not necessarily follow that the motion may be first made in the district court, nor that such requirement may not be waived. The county court, in matters of administration of estates, is a court of general and unlimited jurisdiction, and, therefore, if properly invoked, had unquestioned jurisdiction of the entire subject matter, of which the probate of the will is but one incident, and which jurisdiction, when once acquired, would continue until lawfully divested, without regard to the determination of the probate of the will. Its jurisdiction over the special case, or particular subject matter of an individual estate of some deceased person, is acquired by proof of death, and petition for administration, or letters testamentary, as the case may be, which proof of death and petition form a part of the pleadings. We think that the question of the jurisdiction of the county court over any particular estate must first be raised in the county court and determined there, and, if not so raised and determined and an appeal therefrom taken, it cannot thereafter, ordinarily, be raised in the district court, or elsewhere than in the county court, unless the defect of jurisdiction appears upon the face of the pleadings filed in the county court, so that the records of that court, transmitted to the district court, affirmatively show a lack of jurisdiction. The question of residence is a question of fact, which can only be determined by evidence, and which, in the absence of a showing by the record, must be presumed to have been ascertained and determined by the county court in favor of such jurisdictional facts. There is a marked distinction between the provisions of the statute relative to the practice in appeals from the county court in ordinary civil matters, and appeals in probate matters, which will be observed by reading the statute quoted (section 8043, supra). It *239 is evident from such provisions that a judgment upon any question, either of law or of fact, determined by the county court in probate matters may be appealed to the district court, without interrupting the proceedings as to other matters not appealed from, or submitting to that court the pleadings or process pertaining to, or the question of the general administration, or any other question than the one determined and appealed from.. A further distinction (between appeals in civil cases and those in probate matters) is found in the closing part of section 8043, in this, that the appellate court, after deciding any such questions brought to it upon appeal, shall transmit a transcript of its record showing the disposition of the appeal, upon which the county court must proceed in accordance with such finding. In the case at bar, two issues only were made by the'pleadings — that is, by the caveat and answer thereto — one of fact, to-wit, was the paper writing presented the will of David F. Miller? — one of law, to-wit, if the writing was found to be such will, was it void as offending the rule against perpetuities? No other question relevant to the administration or of probate of the will was appealed from, as shown by this record. The jurisdiction of the district court was purely derivative, acquired by the appeal, and the appeal raised no question of law or fact not raised in the county court, there determined and appealed from, or that is incident to the main question.
Furthermore, we think, and hold, that the jurisdiction of the county court in probate matters, depending upon the residence of the testator or intestate, is one that may be waived by the heirs of intestate, or the heirs and beneficiaries named in the will of testate estates, and that the question of such jurisdiction was waived by the appellant. The administration of this estate had been pending in the county court for more than two years after appellant filed his amended caveat, which constituted his *240 pleading’s in this case, and must have been pending for a considerable time prior thereto. Pie voluntarily submitted himself to the jurisdiction of that court and permitted the administration .to proceed, without a suggestion that it was not the proper county, and took and perfected an appeal from that court to the district court. That his submission to the jurisdiction of the county court was not through mistake or inadvertence is shown by his affidavit for change of venue filed in the district court, wherein he alleges that he consulted his attorney with regard to asking for a change of venue, and had been advised not to make such application. The proceedings in the administration of an estate, particularly with reference to the probate of a will, and the determination of claims presented, are analogous to the trial of civil causes on questions of law and of fact, and we know of no reason why the uniform ruling of the supreme court and court of appeals of this state, that the place of trial, and the right to have a change is a privilege, and not a vested right, and may he waived, and, if a motion for change of venue is not made in apt time, the right, although mandatory, is waived, should not apply with equal or greater force. — Fletcher v. Stowell, 17 Colo., 94, 28 Pac., 326; Forbes v. County Com. of Grand County, 23 Colo., 344, 47Pac., 388; Burton v. Graham, 36 Colo., 199, 84 Pac., 978; Phoenix Indem. Co. v. Greger, 39 Colo., 193, 88 Pac., 1066; Kirby v. U. P. Ry. Co., 51 Colo., 509, 541, et seq., 119 Pac., 1042, Ann. Cas., 1913B, 461; Smith v. People, 2 Colo. App., 99, 29 Pac., 924; Pearse v. Bordeleau, 3 Colo. App., 351, 33 Pac., 140; Smith v. Morrill, 12 Colo. App., 233, 241, 55 Pac., 824; School Dist. v. Waters, 20 Colo. App., 106, 77 Pac., 255. The question of jurisdiction of the county court, raised for the first time in the district court, even if it could he so raised in that court, was not made in apt time. It was not made until all the pleadings had been made up, the cause was ready for *241 trial, and the parties, witnesses and jurors in the court. The reason for holding that the question of jurisdiction of the county court upon matters such as are presented here may be waived, and if not presented in apt time will be so held, is much stronger in view of the importance and necessity of expedition in closing the administration of estates than in ordinary civil cases. This importance and necessity is recognized both by the courts and by express statutory injunction. It would be a reproach upon the law if persons contesting the administration of an estate, or contesting a will, could submit to the jurisdiction of the probate court for the length of time herein disclosed, and then successfully raise the question. Estoppel should apply if waiver were-inapplicable. The motion on the ground of prejudice, or convenience of witnesses, was a matter within the discretion of the court. It does not appear that its discretion was abused.
II.
Counsel for appellant denies the right and authority of the trial judge to direct a verdict in a case involving the validity of a will. This point has been determined adversely to the contention of appellant in Snodgrass v. Smith, 42 Colo., 60, 62, 94 Pac., 312, 15 Ann. Cas., 548, in which our supreme court expressly ruled that the court has the 'same power in will contests to direct a verdict as in ordinary civil eases; and that, whether a court, in directing the jury to return the verdict, commits error is to be determined by the rules applicable in ordinary civil cases. See also, In re Shell’s Estate, 28 Colo., 167, 63 Pac., 413, 53 L. R. A., 387, 89 Am. St. Rep., 181; Butcher v. Butcher, 21 Colo. App., 416, 122 Pac., 397; In re Carey’s Estate (Sup.), 136 Pac., 1175. We discover no-evidence in the record to support the allegations of the caveat that testator was not of sound and disposing mind when he executed his will, and there is no evidence whatever that *242 ■undue or any influence adverse to appellant was exerted over the testator by the persons named in the caveat, or any other person. That the will offered expressed the testator’s mature wishes with reference to the final disposition of his property cannot be questioned by any disinterested person who reads the record. If the jury had returned a verdict adversely to the proponents of the will upon the evidence adduced, it would have been the duty of the trial judge, as stated in his remarks to the jury, to set the verdict aside. Therefore, in directing a verdict, the court not only exercised a right which it possessed, but a duty which it was under obligation to perform.
.III.
The last contention made by appellant is that, upon its face, the will violates the rule against perpetuities, and is therefore against public policy and void. In the printed briefs, as well as upon oral argument, this question was urged as the most important of any, and decisive of the contest; but in our opinion the point raised, on which the offense against the rule is predicated, as applied to the will in this case, is highly technical — abstract and academic rather than substantial, because, whatever may be the decision upon that point, the will may be sustained. TIis contention is based upon the rule against perpetuities in force in this state, which prohibits the suspension of the fee to real estate, or of the vesting of title to personalty, for a longer period than that of designated lives in being at the time of the death of the testator, and twenty-one years and nine months thereafter; or, as the rule is sometimes expressed,' “No interest is good unless it must vest, if at all, not later than twenty-one years and a fraction after some life in being at the creation of the interest. ’ ’ — Gray on Eule Against Perpetuities, 201. The will, after providing for payment of the funeral expenses and debts, bequeathed the entire estate, by words of pres *243 ent gift, to certain beneficiaries, to-wit: to testator’s two sisters, $800 each, if living at time of testator’s death, otherwise to their children; to a faithful domestic, $500; to one foster son, $3,000, to another $1,200; (as to last three named, to lapse if legatee not living at time of testator’s death;) to a foster daughter, $1,500, if living at testator’s death, if not, to her children; to his son, the contestant, $3,000, if living, if not, to his children and divorced wife, or the survivors of them; to each of the four sons of contestant,. $300; the residuary estate, if any, to go to the son, and foster sons, and daughter, in fixed proportions, etc., and directed the executors therein named to convert all property into money and make the distribution. The paragraph of the will which appellant insists is in violation of the rule is as follows:
“I hereby constitute William E. Weston and I. S. Smith of Fairplay, Colorado, and either of them, should the other be dead or refuse to act, executors of this will and trustees of my property,- real and personal, and all right and credits, to whom, on the admission of this mil to probate, the title and ownership of my said property rights and credits shall go, in trust, however, for the realization of said rights and credits and the conversion into money of said real estate and personal property according to their best ability and judgment under the supervision of the court of probate, and for the distribution of all the proceeds, after first paying my funeral expenses and my debts as above directed as well as all expenses of administration, including full compensation to ■my said executors as next hereinafter stated.”
In Chilcott v. Hart, 23 Colo., 40, 45 Pac., 391, 35 L. R. A., 41, Mr. Justice Campbell discusses in a most scholarly manner the law, ancient and modern, pertaining to perpetuities, and the permissible construction of a will so as to give it force and effect when it consists of parts *244 "that are valid and parts that are invalid, when construction is demanded for the purpose of overthrowing it.
As in that case, this is an action to overthrow the will. Counsel for appellant insists that the will is' void because (a) of the clause in the paragraph quoted and italicized, to-wit, “to whom, on the admission of this ivill to probate, the title and ownership of my said property rights and credits shall go, ’ ’ etc., which he insists makes the time of the vesting of the estate in the executors as trustees indefinite, and (b) the vesting of the title of any legatee or beneficiary under the will is left to the uncontrolled judgment of the trustees. It is said that neither the vesting of the title primarily in the trustees, nor ultimately in the beneficiaries, must happen within twenty-one years and a fraction after some'life or lives in being, and that the bare possibility that the estate may not vest within that time makes, not only the clause, but the entire will, void; in support of which appellant cites Gray on Perpetuities (2nd ed.), sec. 201; Johnson v. Preston, 226 Ill., 447, 80 N. E., 1001, 10 L. R. A. (N. S.), 564; Tilden v. Green, 130 N. Y., 29, 28 N. E., 880, 14 L. R. A., 33, 27 Am. St., 487, and other cases. The case of Johnson v. Preston is chiefly relied on because of the use of the words contained in the will there under discussion, to-wit:
“I give and devise to my executor hereinafter named, in trust, for the purpose and for the time hereinafter mentioned * * * my farm * * * to have and to hold for. the space of twenty-five years from and after the date of the probate of this ivill * * * with no power of sale, conveyance or alienation of said land during said twenty-five years by said trustee * * * ,” and the holding of the court that because of the language quoted, the trust estate attempted to be vested in the executor offended the rule against perpetuities, and was therefore void. The striking similarity in the two phrases *245 “on the admission of this will to prohate” and “from and after the date of the probate of this will” as used in the respective wills, and the respect which is paid to decisions of the supreme court of Illinois, gives its ruling great force and influence with this court, even though we are unable to agree with the conclusion of that court, that the words “from and after the probate of this will,” of themselves (if such was its conclusion), violated the rule against perpetuities to the destruction of the trust there attempted to be created. We think, however, that there is a marked distinction between the will in that case and the will in this, as á whole, that the similarity is more apparent than real, and that such distinction affects the allowable construction as to the estate or power attempted to be created in the trustees, and in determining when the trust estate would vest. In the Johnson case there was an express and unequivocal intention to take the property out of commerce by vesting the title •in the trustee, with no power of sale or alienation, and to suspend the ultimate vesting of’ the fee in the beneficiaries for the full period named, and while the suspension of alienation had no effect on the time the title should vest in the trustee, it may affect the construction in ascertaining the intention of the testator and giving such intention its proper effect. That distinction was made in -Armstrong v. Barber, 239 Ill., 389. By the -at bar, not only is there no tying up of the property, no suspension of the power of alienation or vesting of title •except as produced by the words “on the admission of this will to probate,” but the trust attempted to be created is for the express purpose of effecting immediate realization on the credits, and conversion of all the other property, both real and personal, into cash, and the application of the proceeds, first to the payment of funeral expenses, debts, and cost of administration, and then distribution of the balance to the beneficiaries in the will.
*246 The paramount rule in the construction of wills, to which all others must yield, is that the intention of the testator as expressed in the will must he ascertained and given effect if not prohibited by law. — Bacon v. Nichols, 47 Colo., 31, 105 Pac., 1082; University v. Wilson, 54 Colo., 510, 131 Pac., 422; Armstrong v. Barber, 239 Ill., 389, 394, 398, 88 N. E., 246; Orr v. Yates, 209 Ill., 222, 70 N. E., 731; Chilcott v. Hart, 23 Colo., 40, 45 Pac., 391, 35 L. R. A., 41; Tilden v. Green, 130 N. Y., 29, 28 N. E., 880, 14 L. R. A., 33, 27 Am. St. Rep., 487; Johnson v. Preston, supra. The intention of the testator is not to be determined by any single phrase, clause or section, in the will, but from the entire instrument. When the will is read as a whole, it is evident beyond controversy that there was not in the mind of the testator any purpose of taking the property out of commerce, or suspending the vesting of title in the trustees, or its alienation, beyond the date when first under the laws of this state the executors, either in their capacity as statutory administrators of the will, or as trustees under that instrument, could take the property by virtue of the will’s becoming effectual by probate. In sections of the will subsequent to that quoted, prompt and expeditious, indeed immediate, sale and conversion, of the property into money, and distribution thereof to the beneficiaries, is enjoined upon.the executors. The intention of the testator is clear. But it is said that the object of the rule against perpetuities is to defeat the intention of the testator. This we concede, if the intention of the testator was to violate the rule; not otherwise. It is also true that the object of the rule is to defeat any portion of the will the effect of which would be to violate the rule, whatever may have been the intention of the testator. We think the words in that section of the will quoted and the, meaning thereof should be read and construed in connection with the statute of wills, and when so read, the intention and *247 meaning is plain and its effect lawful. Sec. 7081, Rev. Stats. 1908, 7879 Mills’ Ann. Stats., provides that all instruments purporting to he original wills, upon presentation for prohate, shall he recorded by the clerk of the county court in a well-hound book, and that upon admission of such will to probate such record shall be sufficient. Sec. 7088, Rev. Stats. 1908, 7886 Mills’ Ann. Stats., provides for proof of the will, and that “every will when thus proven and recorded by the clerk of the county court in a book to be provided by him for that purpose shall be good, and available in law for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein qnd thereby given, granted, devised and bequeathed.”
/ The words of the will that “on the admission of this will to probate, the title and ownership of my said property rights and credits shall go” to the trustee, have no other or different meaning than the language of the statute last quoted, in substance, that upon the admission of the will to probate and record, it shall be good, and available in law for the granting, conveying and assuring the property thereby granted, devised and bequeathed. Read together, it is evident that the intention of the testator was to conform to the provisions of this statute. If the will violates the rule against perpetuities, it does so by making the precise provision that the statute makes for every will. Under no circumstances or wording of the will could the estate vest in the trustee before the admission of the will to probate. — New York Life Ins. Co. v. Brown, 32 Colo., 365, 376, 76 Pac., 799.
Moreover, under said statutes and others mandatory in terms, requiring the presentation of wills for probate within ten days (sec. 7800, Mills’ Ann. Stats.), and the commencement by the executors of proceedings to cause such will to be proven within thirty days (sec. 7900, Mills’ Ann. Stats.) “enforced by the sanction of compulsion,” *248 subject to fines and penalties, we think that, in construing this will, the presumption should obtain that if valid the will will be admitted to probate in a reasonable time, and well within the period of some life in being and twenty-one years thereafter, or within twenty-one years, where, as in this case, there is no precedent life estate, and that such presumption should be so conclusive that the bare possibility that it would never be presented, or, if presented and valid, would not be admitted to probate within twenty-one years, should not be regarded in this state as violating the rule against perpetuities.
We are reluctant, to the point of unwillingness, to follow Johnson v. Preston, supra, as a precedent, if the effect of adopting the construction there given would be to defeat the will now under consideration in toto; but if we concede that the words i£to whom, on the admission of this will to probate, the title and ownership of my said property rights and credits shall go in trust” offends the rule against perpetuities, and defeats the trust estate attempted by said clause to be vested in the trustees, nevertheless, we think a valid power in trust to sell, convert and distribute was created, and the will as a whole may be sustained with the offending phrase, clause or provision eliminated or disregarded, and that it may be stricken out. The general rule is that where certain items in a will are valid and others are invalid, unless the valid portions are so inseparably connected with the other parts of the will that if stricken therefrom' the general scheme of the testator will be defeated, the will as a whole should not be considered void. — Chilcott v. Hart, supra; Tilden v. Green, supra; Johnson v. Preston, supra; Henderson v. Henderson, 113 N. Y., 1, 20 N. E., 814. In Tilden v. Green, the principle has been thus expressed:
“If several trusts are created by will which are independent of each other, and each complete in itself,. *249 some of which are lawful and others unlawful, and which may be separated from each other, the illegal parts, although void, may be cut off and the legal ones permitted to stand.”
In CMlcott v. Hart, supra, at page 50, it was said:
“If, however, we should agree with appellants that each one of these items is incapable of enforcement, and therefore void for uncertainty, we are clearly of the opinion that all of them might be stricken from the will without impairing its integrity as' a whole, or without affecting the general scheme of the testamentary disposition, or interfering with or defeating the evident general intent of the testator. — 2 Schouler, part 6, chap. 1.”
Keeping in mind these general rules, an examination of this will discloses that the primary object of the testator was that all his property of every kind and character should be converted into cash immediately after his death, or as soon thereafter as the property could be sold without undue sacrifice, and without the delay or expense incident to sales under the usual processes required by the statute in intestate estates, and that the proceeds of such sale should be paid to the several beneficiaries named in .the will, to each of whom, including the contestant, he made a bequest of a fixed amount, by words of present gift; with such object in view, he gave his executors, full power to sell said property to the best of their ability and judgment, without the interposition of the court, and, as incidental arid subordinate to the power to sell, attempted to vest the title in such executors as trustees, provision being made for the residuary estate if there should be an excess, and for ratable diminution' if there should be an insufficiency to meet the specific legacies.
We conclude that the intention of the testator was to vest in his executors a power to sell or otherwise convert the property into money, make payment of debts *250 and expenses, and distribute tbe balance among tbe beneficiaries of the will, and tbat tbe provision tbat tbe title should vest in tbe trustees was subordinate to tbe paramount purpose. Holding tbat view, we also bold tbat tbe provision attempting to expressly vest tbe title in trust may be considered void, stricken out or disregarded, without changing either tbe effect of tbe will or tbe general testamentary scheme; object and purpose of tbe testator, and tbe power in trust may be sustained, although tbe other part should fall. “If tbe trust itself failed, but a valid power in trust was created, it may be executed. ’ ’— Tilden v. Green, supra (page 50). It was not necessary tbat tbe testator should by express language vest tbe title in tbe executors in order to effectuate tbe execution of tbe trust power. If tbe power to sell was effectual, tbe title, so far as was necessary to effect tbat purpose, vested by operation of law. — 2 Woerner on Administration, 716, 718, 719; 1 Jarman on Wills, 261; 262; Ebey v. Adams, 135 Ill., 80, 25 N. E., 1013.
In tbe case of Johnson v. Preston, relied upon by appellant to avoid this will, tbe court, after bolding tbe trust estate void, and striking from tbe will or disregarding all portions thereof containing tbe void trust clause, nevertheless gave tbe will full effect, saying:
“If tbe trust should be upheld and given effect, the ultimate result would not be different from what it would be with tbe trust eliminated. ’ ’
Tbe same may be said in this case. It cannot be said tbat tbe interests of tbe beneficiaries are so interdependent with or upon tbe estate attempted to be given ' to tbe trustees tbat if their devise in trust fails it must pull tbe estate of tbe beneficiaries down with it.
IV.
Neither under tbe trust nor under tbe power is tbe vesting of title in tbe beneficiaries left to tbe uncontrolled *251 discretion of the executors. The discretion vested in the trustees by the Tilden will, denounced as void in Tilden v. Green, supra, substituted for the will of the testator the will of the donees of the power. We have shown that no such discretion was given by the Miller will.
Decided April 14, A. D. 1913.
Judgment affirmed on rehearing February 11, A. D. 1914.
Other assignments of error have not been overlooked. The judgment will be affirmed.